# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHWEST KEY PROGRAMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ESCONDIDO, <br><br> Defendant. | Case No. 3:15-cv-01115-H-BLM <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE** <br><br> [Doc. No. 56] |

On August 10, 2016, Defendant the City of Escondido ("Defendant") filed a motion for summary judgment. (Doc. No. 56.) On October 3, 2015, Plaintiff Southwest Key Programs, Inc. ("Plaintiff Southwest Key") filed a response in opposition to the motion. (Doc. No. 72.) On October 24, 2016, Defendant filed a reply. (Doc. No. 74.) On October 28, 2016, the Court granted the parties' joint motion for leave to allow Plaintiff Southwest Key to file a surreply. (Doc. Nos. 77, 78.) On November 3, 2016, Defendant filed a response to Plaintiff Southwest Key's surreply.[1]

---

[1] The government filed a brief on November 3, 2016. (Doc. No. 80.) On November 17, 2016, the Court permitted Defendant to file a response to the government's brief. (Doc. No. 81.) The government did not attend the hearing on the motion for summary judgment. On February 22, 2017, the Court issued an order requesting the government to advise the Court whether its Statement of Interest still applied. (Doc. No. 90.) On March 20, 2017, the government submitted its notice that the Statement of Interest remains unchanged. (Doc. No. 92.)

(Doc. No. 79.)  On February 1, 2017, Plaintiff Southwest Key filed a Notice of Supplemental Authority. (Doc. No. 86.) On February 3, 2017, the Court held a hearing on the Defendant's motion for summary judgment. John David Loy, Craig Edward TenBroeck, and Michelle S. Rhyu appear on behalf of Plaintiff Southwest Key. Michael R. McGuinness, Alan Brian Fenstermacher, and John A. Ramirez appeared on behalf of the Defendant.  For the reasons discussed below, the Court denies Defendant's motion for summary judgment.

**Background**

The lawsuit arises from Plaintiff Southwest Key's unsuccessful application for a conditional use permit in the City of Escondido. (See Doc. No. 1, Compl. at 6–32.) Plaintiff Southwest Key, a corporate entity, sought to convert a former skilled nursing facility located in a residential zone into a custodial facility for up to 96 unaccompanied alien children ("UAC"). The UAC were taken into custody at the border by Immigration and Customs Enforcement ("ICE") and subsequently transferred to custodial facilities by the Office of Refugee Resettlement ("ORR") while awaiting resolution of their immigration proceedings.  (Id. at 13–15.)  In May 2014, under local zoning law, Plaintiff Southwest Key applied for a conditional use permit from Defendant for its proposed use of the facility. (Id. at 14–15.)  After a hearing, Defendant's Planning Commission denied Plaintiff Southwest Key's application for the conditional use permit on June 24, 2016. (Id. at 20.)  Plaintiff Southwest Key appealed the decision to the City Council.  On October 15, 2014, the City Council held a hearing and affirmed the denial of the conditional use permit. (Id. at 29.)

On May 18, 2015, Plaintiff Southwest Key filed a complaint against Defendant, alleging a violation of (1) the Federal Fair Housing Act; (2) the California Fair Employment and Housing Act; (3) the Equal Protection Clause of the Fourteenth Amendment; and (4) the Supremacy Clause of the United States Constitution. (Doc. No. 1.) On November 9, 2015, Plaintiff Southwest Key filed a first amended complaint ("FAC"). (Doc. No. 29.)  On November 30, 2015, Defendant filed an answer to the

FAC. (Doc. No. 30.)  By the present motion, Defendant moves for summary judgment of all claims.  (Doc. No. 56.)

## Discussion

### I. Legal Standards for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Fortune Dynamic, 618 F.3d at 1031; accord Anderson, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial.  Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v.

Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).  To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings.").  Rather, the non-moving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007).  The court should not weigh the evidence or make credibility determinations.  See Anderson, 477 U.S. at 255.

## II. Plaintiff Southwest Key's Federal and State Fair Housing Claims

Defendant moves for summary judgment, arguing that the Federal Fair Housing Act ("FHA") and California Fair Employment and Housing Act ("FEHA") do not apply to Plaintiff Southwest Key's custodial facilities because such facilities are not "dwellings" for FHA and FEHA purposes and the UAC are not willing participants. (Doc. No. 56 at 9–10.) Plaintiff Southwest Key's federal and state fair housing claims allege that Defendant made unavailable or denied a dwelling on the basis of race, color, or national origin, in violation of the FHA and the FEHA.  See 42 U.S.C. §§ 3601 et seq; Cal. Gov't Code §§ 12927, 12955 et seq.  (Doc. No. 29 at 33.)[2]

### A. Whether Southwest Key's Facility Is a "Dwelling" under the FHA

The FHA provides that "it shall be unlawful . . . to . . . make unavailable or deny, a dwelling to any person because of race, color, religion, . . . or national origin."  42 U.S.C. § 3604(a).  "'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ."  42 U.S.C. § 3602(b).

---

[2] The Court addresses the FHA claim and applies the same analysis to the FEHA claim because the FEHA is analogous in language to the FHA, and California state courts apply the same standards to FEHA and FHA claims.  See Walker v. City of Lakewood, 272 F.3d 1114, 1131, n.8 (9th Cir. 2001) ("[W]e apply the same standards to FHA and FEHA claims.").

As a threshold matter, Defendant maintains that Plaintiff Southwest Key's proposed facility is not within the FHA's definition of "dwelling." Under the FHA, the definition of "dwelling" turns on the meaning of "residence," which is undefined in the statute. See 42 U.S.C. § 3602(b). In deciding the statutory meaning of dwelling, some courts have looked to the purpose of the FHA and the purpose of the structure in question, particularly focusing on freedom of choice. Garcia v. Condarco, 114 F. Supp. 2d 1158 (N.M. 2000) (Detention center not within the purpose of the FHA as freedom of choice is absent.) Other courts have applied two factors in determining whether a facility is a residence for purposes of the FHA: (1) the facility is intended for occupants who remain there for a significant period of time, rather than a transient stay; and (2) the occupants view the facility as a place to return to during this period. Intermountain Fair Housing Council v. Boise Rescue Mission Ministries, 717 F. Supp. 2d 1101, 1109–11 (D. Idaho 2010), aff'd on other grounds, 657 F.3d 988 (9th Cir. 2011) (Homeless shelter not covered by the FHA.)

Applying the statutory language and these tests, numerous courts have classified a variety of structures as covered or not under the FHA. For example, homeless shelters were not covered by the FHA[3], but a variety of structures were within the FHA such as drug and alcohol rehabilitation centers[4], a residential school for emotionally disturbed adolescents[5], a residential child care facility[6], a group home for needy and dependent

---

[3] Intermountain Fair Housing Council v. Boise Rescue Mission Ministries, 717 F. Supp. 2d 1101 (D. Idaho 2010), aff'd on other grounds, 657 F.3d 988 (9th Cir. 2011); Smith v. The Salvation Army, Civ. No. 13-114-J, 2015 WL 5008261 (W.D. Pa. Aug. 20, 2015). Smith v. The Salvation Army, Civ. No. 13-114-J, 2015 WL 5008261 (W.D. Pa. Aug. 20, 2015).

[4] Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp., 455 F.3d 154 (3rd Cir. 2006); cert denied 549 U.S. 1180 (2007); Schwarz v. City of Treasure Island, 544 F.3d 1201, 1216 (11th Cir. 2008); Connecticut Hosp. v. City of New London, 129 F.Supp.2d 123 (D. Conn. 2001).

[5] United States v. Massachusetts Indus. Finance Agency, 910 F. Supp. 21 (D. Mass. 1996).

[6] Cohen v. Township of Cheltenham, Pennsylvania, 174 F. Supp. 2d 307 (E.D. Pa. 2001).

children[7], and student housing[8].

Significantly, several courts have not extended the application of the FHA to custodial facilities where the individuals are involuntarily confined. Some courts have expressly held that detention or custodial facilities are not "dwellings" within the meaning of the FHA because such facilities are the antithesis of freedom of choice in housing. Garcia v. Condarco, 114 F. Supp. 2d 1158, 1162–63 (N.M. 2000) (holding that the FHA did not cover a city jail because "the primary purpose of a jail is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment."); Gold v. Griego, No. CIV 99–1137 DJS/WWD (D.N.M. Feb. 22, 2000) (Court detention center is not within the FHA.) But where an individual could seek voluntary employment in a residential reentry center, a court concluded that the facility was within the FHA. Abdus–Sabur v. Hope Vill., Inc., No. CV 16-156 (RBW), 2016 WL 7408833, at *9 (D.D.C. Dec. 22, 2016). In these cases, the courts focus on freedom of choice as a dispositive factor in the meaning of dwelling.

In the present case, the parties differ on the applicability of the FHA. The Defendant maintains that custodial cases finding a structure not within the FHA as most applicable since the UAC are not willing participants. The UAC are placed in Plaintiff Southwest Key's facilities by government order while awaiting a court's determination whether they should be deported. See 6 U.S.C. § 279(b); 8 U.S.C. § 1232(b), (c); see also the Flores Settlement Agreement, (Doc. No. 57-7, Ex. 5) (requiring UAC be treated "with dignity, respect and with special concern for their particular vulnerability as minors" and be placed "in the lease restrictive setting appropriate to the minor's age and special needs"). The fact that the UAC are placed in the least restrictive setting does not mean that they are not under the custody of the federal government. See Walding

---

[7] United States v. Hughes Memorial Home, 396 F. Supp 544 (W.D. Va. 1975).

[8] United States v. University of Nebraska at Kearney, 940 F. Supp. 2d 974 (D. Neb. 2013).

v. United States, 955 F. Supp. 2d 759, 762 (W.D. Tex. 2013) (finding that unaccompanied Central American-born minors were detained in shelter care facilities provided by contractors like Plaintiff Southwest Key pertaining to the Flores Agreement). Recently, a district court enforced the Flores Agreement by interpreting a right to a bond re-determination for UAC, an acknowledgment that the UAC are in custody and are not willing participants. Flores, et al v. Lynch, et al, Dkt. No. CV 85-4544 DMG (AGR), Doc. No. 318 (C.D. Cal. January 20, 2017).

The custodial nature of the UAC placement, even in a placement appropriate for minors, argues in favor of Defendant's position that the proposed facility was not a dwelling under the FHA. Garcia, 114 F. Supp. 2d 1158 (N.M. 2000). The Court notes that the UAC argued in the motion to seek a bond hearing that the purpose was to prevent "wrongful detention." Flores, et al v. Lynch, et al, Dkt. No. CV 85-4544 DMG (AGR), Doc. No. 318 (C.D. Cal. January 20, 2017). Additionally, the UAC do not have a choice as to what facility, city, or even state they are held following their apprehension by federal law enforcement. (Doc. No. 56-1 at 16–19.) They have no choice in their placement at Plaintiff Southwest Key's facilities, which are designed to regulate where and how they may live and to limit, rather than facilitate, their freedom of movement. (Id.) The UAC are not willing participants and their stays are transient.[9] Thus, like the facilities in Garcia and Intermountain, Defendant argues that Plaintiff Southwest Key's proposed custodial facility is beyond the scope of the FHA.

On the other hand, Plaintiff Southwest Key argues that the cases involving group children's homes and student housing, among other authorities, are more persuasive given the liberal construction of the FHA. Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008). In support of its contention that Plaintiff Southwest Key is a

---

[9] UAC in Southwest Key facilities average 27 days. (Doc. No. 29, FAC, para. 26.) The Ninth Circuit has not "squarely addressed the issue of whether all temporary shelters fit within the Act's definition of 'dwelling.'" Community House, Inc. v. City of Boise, 490 F.3d 1041, 1048 n.2 (9th Cir. 2007).

dwelling under the FHA, Plaintiff Southwest Key references two out-of-circuit district court cases involving minor children. Defendant distinguishes these cases as unlike the proposed facility for UAC participants. In Cohen v. Twp. of Cheltenham, Pennsylvania, 174 F. Supp. 2d 307 (E.D. Pa. 2001), the court concluded that the children's group home was intended for occupants who remain there for a significant period of time rather than a transient stay and therefore met the definition of dwelling under the FHA. The Cohen court, however, granted the defendant's motion for summary judgment on the basis of no disability discrimination under the FHA. In United States v. Hughes Memorial Home, 396 F. Supp 544 (W.D. Va. 1975), the Court invalidated a racially restrictive covenant prohibiting admission of African American children in a group home. Defendant contends that these cases are materially different from this case since neither Hughes nor Cohen involved a facility for unwilling participants like the UAC and the length of stay in those cases was not analogous to this case.[10]

Further support for the Defendant's position comes from the Cooperative Agreement between Plaintiff Southwest Key and the federal government. In this case, the Cooperative Agreement between Plaintiff Southwest Key and the government states that the purpose is to "assure the UAC do not run away and are available to attend immigration proceedings." (Doc. No. 64, Defendant's Ex. 13, p. 197.) The custodial placement is consistent with the requirement for a bond hearing for UAC. Flores, et al v. Lynch, et al, Dkt. No. CV 85-4544 DMG (AGR), Doc. No. 318 (C.D. Cal. January 20, 2017). If the UAC are simply living at a residence, there is no justification for a bond hearing.

The fact that UAC are provided with education, health care, counseling, and other services at Plaintiff Southwest Key's facilities until their legal status in the United States is resolved does not make Plaintiff Southwest Key's facilities akin to a university or boarding school. United States v. University of Nebraska, 940 F. Supp. 2d 974,

---

[10] UAC in Southwest Key facilities average 27 days. (Doc. No. 29, FAC, para. 26.)

979–81 (D. Neb. 2013) (holding that student housing was a dwelling under the FHA because university students, unlike inmates, are willing participants); Connecticut Hosp. v. City of New London, 129 F. Supp. 2d 123, 133 (D. Conn. 2001) (holding that the FHA applied to a rehabilitation facility because the residents are willing participants in the treatment program). Unlike schools, whose main purpose is to provide education, the main purpose of Plaintiff Southwest Key's facilities is to detain the UAC after they are apprehended by federal authorities until their release from custody or removal from the United States.  Indeed, the Cooperative Agreement between Plaintiff Southwest Key and the government expressly states that the purpose is to "ensure the UAC do not run away and are available to attend immigration proceedings." (Doc. No. 64, Defendant's Ex. 13, p. 197.)  In this case, the undisputed evidence is that the UAC do not have a choice with respect to their placement.

But when ruling on a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light must favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Faced with two reasonable conclusions from the cases and the facts, there is a triable issue of material fact on whether the facility is a dwelling under the FHA and FEHA. Therefore, the Court denies summary judgment to Defendant on Plaintiff Southwest Key's FHA and FEHA claims.

B.   The FHA Is Intended to Promote Freedom of Choice in Housing

The FHA's legislative history confirms that the FHA is intended to promote freedom of movement and freedom of choice in housing. See Garcia, 114 F. Supp. 2d 1158, 1162–63 (N.M. 2000) (The FHA does not apply to prisons or jails because there is "no indication in the language or the legislative history of the FHA to support the conclusion that Congress intended that Act to protect housing discrimination in detention facilities; especially since such facilities are intended to limit, rather than facilitate, prisoners freedom of movement."); Burney v. Housing Authority of Beaver, 551 F. Supp. 746, 768–69 (W.D. Pa. 1982) (The FHA's legislative history reveals the "primary congressional intention in passing the legislation was to break up residential

concentrations of minorities[,] . . . to foster integrated living patterns[,] . . . [and] to promote freedom of choice in housing . . . ."); Keller v. City of Fremont, 719 F.3d 931, 949 (8th Cir. 2013) ("[A] state law or local ordinance that restricts or disadvantages aliens not lawfully present in the country has no . . . historic ties to the purposes of the FHA."); Southend Neighborhood Improvement Ass'n v. County of St. Clair, 743 F.2d 1207, 1210 (7th Cir. 1984) ("[The FHA] is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons . . . ."). The FHA is intended to promote an individual's ability to live in a residence of choice in the community. Id. The FHA is not intended to cover the mandatory placement of an UAC in custodial facilities like Plaintiff Southwest Key's, even when such detention is as humane as possible. The undisputed fact remains that UAC are not free to leave and have no choice in their placement. Where "the legislative history is clear, reliable and uncontroverted," a court "would be wrong to ignore it." Council for Urological Interests v. Burwell, 790 F.3d 212, 231 (D.C. Cir. 2015). This legislative history argues in favor of summary judgment for Defendant.

Like the argument on statutory meaning, the Court must draw all inferences in favor of the non-moving party when ruling on a motion for summary judgment. Scott, 550 U.S. at 378. Since the FHA was intended to provide "for fair housing throughout the United States," 42 U.S.C. § 3601, the Court concludes that further development of the record will be useful to determine whether Plaintiff Southwest Key's proposed facility was custodial or a dwelling. Schwarz, 544 F.3d 1201 (FHA liberally construed.) As a result, the Court denies Defendant's motion for summary judgment on the FHA and FEHA claims.

    C.    <u>Whether Defendant Made Housing Unavailable to a Protected Class under the FHA</u>

Defendant argues that Plaintiff Southwest Key's FHA claim is speculative because other sites were available, so it did not make housing unavailable to a protected class. Plaintiff Southwest Key opposes on the ground that alternative sites are irrelevant

to its claim. Defendant maintains that other housing alternatives are relevant to the speculative nature of Plaintiff Southwest Key's claims.

Evidence in the record demonstrates that there was adequate capacity in Plaintiff Southwest Key's existing facilities and diminished demand for new facilities in the relevant time period. (Doc. No. 57-5, Ex. 3, Rodriguez Dep. at 17–20.) Further, Plaintiff Southwest Key had the option to open a facility that complied with local zoning regulations within the City of Escondido. (See Doc. No. 1 at 12.) Therefore, Defendant argues that Plaintiff Southwest Key's alleged injury is speculative and its fair housing claims are unripe. See, e.g., Hallmark Developers, Inc. v. Fulton County, 466 F.3d 1276, 1286–88 (11th Cir. 2006) (holding that the FHA claim failed when "the group affected by the disputed decision is inherently speculative" because there was no "waiting list for affordable housing or a shortage of housing for which only a defined group qualified"); Orange Lake Associates, Inc. v. Kirkpatrick, 21 F.3d 1214, 1228 (2d Cir. 1994) (holding that the FHA claim failed when the plaintiff provided "no evidentiary support for its conclusion that [denial of] its proposal to construct condominium homes" would actually make housing available to a protected group).

Plaintiff Southwest Key responds that a violation may support a claim for violation of the FHA and FEHA for injury to its own mission. Nozzi v. Housing Authority of City of Los Angeles, 806 F.3d 1178 (9th Cir. 2015). Taken together, the Court concludes that triable issues of material fact preclude Defendant's motion for summary judgment on the FHA and FEHA claims at this time.

**III.   Plaintiff Southwest Key's Equal Protection Claim**

Defendant moves for summary judgment because Plaintiff Southwest Key does not have standing to raise equal protection claims on behalf of the UAC. (Doc. No. 56-1 at 29–31.) In opposition, Plaintiff Southwest Key argues that Defendant's action constituted discrimination against UAC and against it on the basis of race, color, national origin, alienage, or immigration status, in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment and against it. (Doc. No. 29 at

34.)

To bring an equal protection claim under 42 U.S.C. § 1983, Plaintiff Southwest Key must show that (1) the conduct alleged was committed by an individual acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. See West v. Atkins, 487 U.S. 42, 48 (1988); Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). The Supreme Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975); see, e.g., Kowalski v. Tesmer, 543 U.S. 125, 129–34 (2004) (attorneys lacked standing to assert § 1983 claims on behalf of future indigent clients); Fleck & Assocs, Inc. v. City of Phoenix, 471 F.3d 1100, 1103–06 (9th Cir. 2006) (corporation lacked standing to assert constitutional right to privacy claims on behalf of its clientele).

Furthermore, Defendant argues that San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470 (9th Cir. 1998) controls here. In San Pedro Hotel, hotel owners sued the city after it denied a rehabilitation and acquisition loan necessary for the sale of the hotel to a not-for-profit developer that built housing for the mentally disabled. Id. at 472–74. The Ninth Circuit held that although the plaintiffs had standing to bring an FHA claim, they lacked standing to bring an equal protection challenge based on the allegedly discriminatory housing practice affecting third parties. Id. at 474–75, 479. "[The plaintiffs] have no standing to assert that the rights of the mentally ill have been violated by the City. With no alleged violation of their own rights and no standing to assert the rights of others, the [hotel owners] have no claim under § 1983." Id. at 479.

In the present case, Plaintiff Southwest Key is a corporation, not a member of a protected class, and the FAC does not allege that it has been deprived a right to equal protection other than a statement that the zoning decision hurt its mission. (Doc. No. 29, FAC, para. 124.) As a corporation, Plaintiff Southwest Key is not entitled to ignore zoning requirements for a non-conforming use. Moreover, Defendant points out that

there was adequate capacity in Plaintiff Southwest Key's existing facilities and diminished demand during the relevant time period, making the claim of corporate injury to its mission too speculative.[11] Hallmark, 466 F.3d 1276, 1286–88 (11th Cir. 2006).

Furthermore, Defendant argues that Plaintiff Southwest Key cannot tether a third-party claim to any harm allegedly suffered by the UAC. Plaintiff Southwest Key's reference to RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th Cir. 2002) has no application here. In RK Ventures, the nightclub owners had standing to assert their own equal protection claim against the city for racial discrimination of their patrons because the city "forc[ed] appellants to discriminate against members of the protected class." Id. at 1056. Here, Plaintiff Southwest Key does not and cannot argue that Defendant's denial of a permit for a particular site forced it to discriminate against a protected class.

Nevertheless, Plaintiff Southwest Key seeks to meet the requirements for the limited exception to the general rule prohibiting third-party standing. "It may be necessary to grant a third party standing to assert the rights of another when (1) the party asserting the right has a close relationship with the person who possesses the right and (2) there is a hindrance to the possessor's ability to protect his own interests." Mills v. United States, 742, F.3d 400, 407 (9th Cir. 2014).

Plaintiff Southwest Key's claim for monetary damages for itself does not represent the interest of the UAC, but represents harm to its own mission. See RK Ventures, 307 F.3d at 1055 (reasoning that the plaintiff's claim for money damages did not establish third-party standing because damages paid to the operator of a nightclub

---

[11] Plaintiff Southwest Key's time to amend the pleadings has long since past and Plaintiff Southwest Key has not sought leave to amend nor shown good cause or diligence to permit amendment. (See Doc. No. 19.) Once the Court issues a scheduling order, it may only be modified for good cause and diligence. Fed. R. Civ. P. 16(b)(4). Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992).

would not redress its patrons' injuries).[12] Secondly, Plaintiff Southwest Key's argument that the UAC could not have filed their own suit due to financial burdens and lack of legal sophistication is belied by class action suits brought by UAC. See, e.g., Flores v. Lynch, 828 F.3d 898 (9th Cir. 2016). Additionally, a prayer for injunctive relief is not cause of action and does not confer standing under San Pedro Hotel, 159 F.3d 470 (9th Cir. 1998). Therefore, the Court declines to find third party standing for Plaintiff Southwest Key.

Nevertheless, based on its statement in the FAC that Defendant's actions "hurt its mission," Plaintiff Southwest Key may proceed with its own equal protection claim, but not the claims of the UAC. (Doc. No. 29, FAC, para. 124.) Defendant's argument that the claim is too speculative may be resolved on the trial of the merits where Plaintiff Southwest Key bears the burden of proving its claim. Accordingly, the Court declines to dismiss Plaintiff Southwest Key's equal protection claim for damages to its own mission.

## IV. Plaintiff Southwest Key's Supremacy Clause Claim

Defendant moves for summary judgment because Plaintiff Southwest Key failed to assert a valid claim under the Supremacy Clause. (Doc. No. 56-1 at 31.) Plaintiff Southwest Key opposes on the grounds that Defendant's conduct violated the Supremacy Clause by discriminating against a federal contractor, frustrating the federal government's exercise of its legal duty to care for UAC, and invading the exclusive field of federal policy on immigration. (Doc. No. 29 at 35.)

As a threshold matter, the Supremacy Clause "is not a source of any federal rights" and "of its own force, does not create rights enforceable under §1983." Golden

---

[12] The Court distinguishes Valle del Sol Inc. v. Whiting, 732 F.3d 1006 (9th Cir. 2013), which held that church had organizational standing to challenge state statute that prohibits harboring or transporting unauthorized aliens. 732 F.3d at 1018. Here, Plaintiff Southwest Key is a corporate entity seeking monetary relief and does not represent the interest of the UAC. But if Plaintiff Southwest Key shows injury to its own mission, it has an arguable claim for its damages. As a result, dismissal or summary judgment is not appropriate at this time.

State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107 (1989). Plaintiff Southwest Key contends that the government's interest in federal immigration policy preempts Defendant's decision to deny a conditional use permit to Plaintiff Southwest Key. Plaintiff argues that field preemption or conflict preemption apply here based on the federal government's interest in immigration. United States v. Alabama, 691 F.3d 1269, 1281 (11th Cir. 2012). Under field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." Arizona v. United States, 132 S.Ct. 2492, 2501 (2012). With conflict preemption, "even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000).

Based on Supreme Court precedent, state or local laws that require verification of immigration status are not automatically preempted by federal law, but some state laws are preempted where the laws meet the test for field or conflict preemption. See Chamber of Commerce of U.S. v. Whiting, 563 U.S. 582 (2011). The Defendant contends that its decision to deny a conditional use permit is not preempted by federal immigration policy but is a proper exercise of its land use regulatory power. In Plyler v. Doe, the Supreme Court stated:

> Despite the exclusive federal control of this Nation's borders, we cannot conclude that the States are without any power to deter the influx of persons entering the United States against federal law, and whose numbers might have a discernible impact on traditional state concerns.
> 457 U.S. 202, 228 n.23 (1982).

Generally, local governments have significant discretion to constitutionally regulate land use. The law is well-settled that "[t]he power of local governments to zone and control land use is undoubtedly broad . . . . [T]he courts generally have emphasized the breadth of municipal power to control land use . . . ." Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981); see FERC v. Mississippi, 456 U.S. 742, 767 n.30 (1982) ("[R]egulation of land use is perhaps the quintessential state activity."); see

Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988) ("Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong.")

Significantly in this case, the federal government declined to assert federal preemption and referred to it as "jurisdiction" in correspondence with Plaintiff Southwest Key. (Doc. No. 88.) As a result, the Court has reservations over Plaintiff Southwest Key's expansive notion of field or conflict preemption for the facts of this case. But on a motion for summary judgment, the Court must view the facts and draw all reasonable inferences for the non-moving party. Scott, 550 U.S. at 378. Preemption may be an issue of law, but further development of the record should assist the Court in its decision on the Supremacy Clause. Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff Southwest Key's Supremacy Clause claim without prejudice.

## Conclusion

After fully considering the briefs and the arguments of counsel, the Court denies Defendant's motion for summary judgment on all claims. The Court orders the parties to meet and confer and propose a scheduling order for the remainder of the case within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: March 24, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT